```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

JOSEPH MATHIRAMPUZHA,          :
    Plaintiff,                 :
                               :
v.                             :     Civil No. 3:04cv841 (JBA)
                               :
UNITED STATES POSTAL SERVICE,  :
et al.,                        :
    Defendants.                :
```

### Ruling on Motions for Dismissal and Summary Judgment
### [Docs. ## 58, 80]

Joseph Mathirampuzha ("Mathirampuzha"), a mail handler employed by the United States Postal Service ("USPS"), has brought this lawsuit alleging national origin discrimination, harassment and retaliation, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000-e et seq., and negligent supervision under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 et seq.[1]  The USPS now moves for dismissal of the FTCA claim as preempted by the Federal Employees' Compensation Act, and for summary judgment on the Title VII claim.  For the reasons that follow, the motions are granted.

---

[1] By Ruling dated June 7, 2005, this Court granted a motion to dismiss plaintiff's claim under the Connecticut Fair Employment Practices Act, all claims against individual defendant Ron Sacco, and plaintiff's prayer for punitive damages.  The USPS was held to be the proper respondent for plaintiff's Title VII claim.  See Mathirampuzha v. Potter, 371 F. Supp. 2d 159 (D. Conn. 2005) [Doc. # 28].

This case then was consolidated with Mathirampuzha v. United States Postal Service, 3:04cv1802 (RNC), which alleges an FTCA claim.  See Order [Doc. # 79] dated 3/3/06.

**I.    Factual Background**

The summary judgment record reveals the following facts. Plaintiff, who was born in India and immigrated to this country in about 1989 at the age of 32, has worked for the USPS as a mail handler since 1997. Mathirampuza Dep., Def. Ex. 1-A [Doc. # 58-3] at 6, 15. Since 2000, he has worked "Tour 3," from 4:30 p.m. to 1:00 a.m., at the USPS Processing and Distribution Center in Wallingford, Connecticut. Id. at 16, 18.

This lawsuit arises from an incident that occurred in 2003 between plaintiff and a USPS supervisor named Ron Sacco. Sacco had supervised plaintiff occasionally during 1999, but was no longer plaintiff's direct supervisor by 2003. Id. at 24-25. In 2003, plaintiff's direct supervisor on Tour 3 was Supervisor of District Operations ("SDO") Claudio Scirocco, whose supervisors in turn were Managers of District Operations ("MDO") Curtis Parente and Dan Kulak. Id. at 21. Sacco was MDO on Tour 1, which runs from 11:00 p.m. to 7:30 a.m. and therefore overlaps with Tour 3, plaintiff's tour, by half an hour. Sacco Dep., Def. Ex. 2-A [Doc. # 58-5] at 21. As MDO, Sacco was senior to SDO Scirocco. See id. at 68.

At approximately 11:30 p.m. on September 29, 2003, Scirocco instructed plaintiff to go pick up "reject" mail from a particular machine, which was outside plaintiff's usual responsibilities. Plaintiff encountered Sacco as he was coming

down an aisle with a "postcon," a wheeled container for carrying mail, on his way to fulfill Scirocco's instructions.  The accounts of what happened next are widely divergent.  According to plaintiff, Sacco asked him in a "loud voice, 'Joe, where are you going?'" Mathirampuzha Dep. at 76-77.  He explained he was going to pick up "reject" mail, and Sacco pointed at him and "yell[ed]... 'Joe, go [to] [Area] 117, otherwise punch out and go home." Id. at 77.  Plaintiff did not respond and as he walked away Sacco grabbed his arm, poked him in the left eye, and hit his upper chest four or five times.  Id.  Then Sacco threatened to "never let [plaintiff] to go to [the] Hartford plant," where plaintiff had long been requesting a transfer.  Id.  At that point, Scirocco intervened and, according to plaintiff, "sav[ed] my life." Id.

By contrast, Sacco flatly denies that there ever was a confrontation between plaintiff and him.  Sacco Dep. at 69-73.  He states he did not become agitated, raise his voice, point his finger, or touch plaintiff at all.  Id.  He also denies mentioning plaintiff's transfer to Hartford.  Id. at 79.  He says he only asked plaintiff where he was going, and was satisfied when he ascertained that plaintiff was working a "non-scheduled" overtime day so that he was due to sign out shortly.  He describes his main concern as whether plaintiff was working a Tour 3 overtime shift or a Tour 1 overtime shift, because "[i]f

he was on overtime after tour, yes, he is my responsibility [on Tour 1]." Id. at 92.

Sharese Harrington, who was working nearby and characterized Sacco as a "bully" who made her "uncomfortable," said that Sacco pointed his finger at plaintiff, yelled, and "bump[ed] [plaintiff] with his shoulder after he finished saying what he had to say."  Harrington Dep., Def. Ex. D [Doc. # 69], at 13, 15. She described the physical contact as Sacco brushing his shoulder into plaintiff.  Id. at 20.  Gary Welskopp, another employee witness, said that Sacco "violently" "banged" plaintiff's chest with his hand while "yelling" at plaintiff.  Welskopp Dep., Def. Ex. E [Doc. # 69] at 15-16.  Both Harrington and Welskopp stated that they could hear Sacco's voice even over the din of the automated mail machines that were in operation at the time.

Plaintiff had had previous conflicts with Sacco.  In 1999, when Sacco was supervising him, Sacco refused plaintiff a lunch break one day.  Mathirampuzha Dep. at 36-37.  He also states that Sacco once refused him help in moving heavy mail containers, whereas other employees were allowed help.  In 2000, plaintiff requested Sacco's assistance in obtaining a transfer to the Hartford Processing and Distribution Center, which was closer to his family, but Sacco did not respond.  Id. at 68-69, 74. Plaintiff further contends that Sacco is now "watching [him] all the time" at the Wallingford plant and has not spoken to him

4

since the September 29, 2003 incident.  Mathirampuzha Dep. Vol. 2 at 76.

On November 2, 2003, plaintiff filed a complaint with the USPS Equal Employment Opportunity office in Hartford.  Pl. Ex. O.  The complaint, which plaintiff submitted pro se, alleged discrimination on the basis of race, color and national origin, and states that the discrimination took place on "9/29/03."  Id. at 1.  The narrative description pertains only to the confrontation with Sacco on that date and states, in substance, that Sacco yelled at him, "rushed [plaintiff] like a football player, hit [plaintiff's] chest with his full body power" and spit in his face and poked him in the left eye.  Id. at 2.  It does not mention any previous interactions between Sacco and plaintiff.

Mathirampuzha's wife and brother noticed a marked change in his mental health since the confrontation with Sacco.  He consulted with a psychiatrist and now takes antidepressant medication, and told his doctor that he was afraid he would be attacked at work again.  See Vincent George Dep., Pl. Ex. G, at 33-35; Grace Abraham Dep., Pl. Ex. H, at 16-18; Letter from Dr. Bollepalli Subbarao, Pl. Ex. N, at 3.

Plaintiff also told his doctor that he believes Sacco "makes problems to [sic] other minority people also."  Bollepalli Letter at 3.  William Hylton, who was President of plaintiff's union

when the incident occurred, said that the union had filed approximately 8-10 complaints against Sacco between 1997 and 2004. Hylton Dep., Def. Ex. 3, at 11-12. Many of these complaints involved Sacco "shoving" or yelling at employees under his supervision, pointing his finger, and/or threatening to fire or remove employees from the building. See id. at 12-21. Of the employees involved in these incidents, Hylton testified that five were white (Lou Mauro, Bruno Munzi, Vinnie Ferrara, Ernie Sargent, Jules Mineo) and three were black (Wes Forbes, John Johnston, Vince Mack). Senjin Abraham, plaintiff's brother, also had problems with Sacco and reported to Hylton "a couple of times ... about Ron [Sacco] yelling in his face, pointing his finger, [and] threatening to fire him...." Id. at 21; see also Senjin Abraham Dep. at 33.[2]

Finally, plaintiff asserts that he has been denied a transfer to Hartford due to his conflicts with Sacco. He argues that USPS's stated reason for the denial – that plaintiff has been involved in two accidents at the Wallingford plant – is pretextual because those accidents were not his fault. Plaintiff testified that he knows from his brother-in-law, Vincent George, who works at the Hartford plant, that other individuals have been

---

[2] Plaintiff also heard that Sacco "attacked" "an Indian guy" named Peter Patel but has no first-hand knowledge of the incident. Mathirampuzha Dep. at 39, 43. The Court will not consider this inadmissible hearsay evidence in deciding the summary judgment motion.

granted transfers there, and new employees hired there, id. at 85-86, while plaintiff's application has routinely been denied since 1997, see letters attached to Mathirampuzha Dep., Vol. 1, as Ex. 1.

## II. Standards

### A. Motion to Dismiss, Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the court may refer to evidence outside the pleadings. Id. Evidence concerning the court's jurisdiction "may be presented by affidavit or otherwise." Kamen v. American Tel. & Tel. Co., 791 F.2d 1006, 1011 (2d Cir. 1986). A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists. Makarova, 201 F.3d at 113; see also Malik v. Meissner, 82 F.3d 560, 562 (2d Cir. 1996) ("The burden of proving jurisdiction is on the party asserting it.").

### B. Summary Judgment, Rule 56

Summary judgment is appropriate under Federal Rule of Civil Procedure 56(c) when the moving party establishes that there is no genuine issue of material fact to be resolved at trial and

that the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317 (1986). Materiality is determined by the substantive law that governs the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In this inquiry, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden of establishing that there is no genuine issue of material fact in dispute will be satisfied if he or she can point to an absence of evidence to support an essential element of the non-moving party's claim. Celotex, 477 U.S. at 322-23. "A defendant need not prove a negative when it moves for summary judgment on an issue that the plaintiff must prove at trial. It need only point to an absence of proof on plaintiff's part, and, at that point, plaintiff must 'designate specific facts showing that there is a genuine issue for trial.'" Parker v. Sony Pictures Entm't, Inc., 260 F.3d 100, 111 (2d Cir. 2001) (quoting Celotex, 477 U.S. at 324); see also Gallo v. Prudential Residential Servs., 22 F.3d

1219, 1223-24 (2d Cir. 1994) ("[T]he moving party may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case."). The non-moving party, in order to defeat summary judgment, must then come forward with evidence that would be sufficient to support a jury verdict in his or her favor. Anderson, 477 U.S. at 249 ("[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party"). In making this determination, the Court draws all reasonable inferences in the light most favorable to the party opposing the motion. Matsushita, 475 U.S. at 587. However, a party opposing summary judgment "may not rest upon the mere allegations or denials of the adverse party's pleading," Fed. R. Civ. P. 56(e), and "some metaphysical doubt as to the material facts" is insufficient. Id. at 586 (citations omitted).

**III. Discussion**

    **A.   Hostile Work Environment and Retaliation Claims**

The first issue is the scope of plaintiff's Title VII claim. Defendant moves for dismissal of plaintiff's hostile work environment and retaliation allegations on the ground that plaintiff did not present these claims to the USPS EEO Office, and therefore plaintiff is precluded from bringing them in federal court. Plaintiff argues that Sacco's alleged ongoing harassment based on national origin and retaliation against him

9

for making a complaint about missing a lunch break in 1999 are reasonably related to his administrative claim of national origin discrimination, and necessarily would have been discovered in any EEO investigation into his complaint.

"Title VII imposes an exhaustion requirement that allows federal courts to exercise jurisdiction over a plaintiff's Title VII claims only when the plaintiff has previously presented the claims in [his or] her [administrative] complaint." Carter v. State of New York, 310 F. Supp. 2d 468, 473 (N.D.N.Y. 2004) (citing Terry v. Ashcroft, 336 F.3d 128, 150-51 (2d Cir. 2003)). An aggrieved federal employee must bring a complaint to an EEO counselor within 45 days of the discriminatory practice alleged. See 42 U.S.C. § 2000e-5(e); 29 C.F.R. § 1614.105(a).  However, the Supreme Court has held that Title VII's time limitations are not jurisdictional prerequisites but more akin to statutes of limitations, and therefore are "subject to equitable doctrines." National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002) (citing Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982)).  One such equitable doctrine is that a court may take jurisdiction over claims that are "sufficiently related to the allegations in the charge that it would be unfair to civil rights plaintiffs to bar such claims in a civil action."  Terry, 336 F.3d at 151.  Claims are sufficiently related where "the conduct complained of would fall within the scope of the [administrative]

investigation which can reasonably be expected to grow out of the charge of discrimination" and "where the complaint is one alleging retaliation by an employer against an employee for filing an EEOC charge." Id. (internal quotation marks and citation omitted).

"In determining whether claims are reasonably related, the focus should be on the factual allegations made in the [administrative] charge itself, describing the discriminatory conduct about which a plaintiff is grieving." Deravin v. Kerik, 335 F.3d 195, 201 (2d Cir. 2003) (internal quotation marks and citation omitted). In other words, "the factual allegations made in the formal litigation must correspond to those set forth in the administrative charge." Chacko v. Patuxent Inst., 429 F.3d 505, 509 (4th Cir. 2005). Thus, an "allegation of a discrete act ... in an administrative charge is insufficient when the plaintiff subsequently alleges a broader pattern of misconduct." Id.; see also Green v. Elixir Indus., Inc., 152 Fed. Appx. 838, 840-41 (11th Cir. 2005) (unpublished) (affirming summary judgment on hostile work environment claim where plaintiff's EEOC charge alleged only termination based on race and gave the termination date as the sole date discrimination occurred); Pound v. Am. Red Cross Blood Svces., 343 F. Supp. 2d 204, 207 (W.D.N.Y. 2004) (granting summary judgment on hostile work environment claim where EEOC charge alleged discriminatory implementation of a

production quota that adversely affected female employees).

For example, where a female police officer alleged in her EEOC complaint discriminatory removal from a specialized task force, failure to promote her, and termination because of discrimination and retaliation, the district court found that administrative complaints about these three discrete acts were insufficient to exhaust a hostile work environment claim. Sivulich-Boddy v. Clearfield City, 365 F. Supp. 2d 1174, 1181 (D. Utah 2005).  By contrast, where a plaintiff alleged in an EEOC complaint "harassment" "[o]n and prior to" a certain date, as well as a particular act of harassment on that date, a court held that such allegations reasonably encompassed a hostile work environment claim.  Cortes-Devito v. Village of Stone Park, 390 F. Supp. 2d 760 (N.D. Ill. 2005).

In this case, plaintiff's hostile work environment harassment claim cannot be seen as reasonably related to his administrative claim of national origin discrimination.  His EEO charge addresses only the September 29 confrontation with Sacco, and makes no allegation of harassment or any ongoing or even prior discriminatory conduct by Sacco or anyone else.  It states that the discrimination took place on September 29, 2003. Contrary to plaintiff's argument, had the EEO Office conducted a

full investigation into his administrative complaint,[3] the investigation would not reasonably have been expected to encompass any other incidents or any pattern of nationality-based harassment by Sacco. While recognizing that the standard is one of "loose pleading ... based on the recognition that [administrative] charges frequently are filled out by employees without the benefit of counsel and that their primary purpose is to alert the [agency] to the discrimination that a plaintiff claims he is suffering," Deravin, 335 F. 3d at 201 (internal quotation marks and citation omitted), the Court concludes that Mathirampuzha's EEO complaint alleging facts relating only to the September 29, 2003 incident with Sacco is insufficient to place the agency on notice of a broader hostile work environment claim. If the Court were to hold otherwise, the exhaustion requirement would be eviscerated for hostile work environment claims, because any administrative complaint about one discrete incident could then be expanded to encompass a hostile work environment claim.

    Mathirampuzha's retaliation claim also is not reasonably related to his EEO charge. He does not allege retaliation for filing that EEO charge in November 2003. Rather, he alleges that Sacco retaliated against him for earlier complaining orally to his union about the denial of a lunch break in 1999. Exhaustion

---

[3] The EEO Office told plaintiff it was unable to investigate while honoring his request for anonymity, so it did not do so. See EEO Report, Mathirampuzha Dep. Vol. 2, Ex. 7, at 10.

is not required where a plaintiff alleges that he was retaliated against for making the underlying complaint of discrimination in violation of Title VII. <u>Terry</u>, 336 F.3d at 151.  The purpose behind this exception is to avoid rewarding employers who successfully intimidate their employees into not filing further EEO charges, and to avoid "the perverse result of promoting employer retaliation in order to impose further costs on plaintiffs and delay the filing of civil actions relating to the underlying acts of discrimination." <u>Id.</u> at 151 (internal quotation marks and citation omitted).  Here, these goals would not be served by excusing Mathirampuzha's failure to exhaust his retaliation claim, because he is not claiming retaliation for filing a discrimination claim or alleging that Sacco retaliated against him to delay his filing of such a claim.  Plaintiff therefore does not meet the second <u>Terry</u> exception to the exhaustion requirement.

For these reasons, defendant is entitled to summary judgment on plaintiff's hostile work environment and retaliation claims, and the allegations concerning Sacco's actions toward plaintiff before September 29, 2003 are dismissed.

**B.   Title VII National Origin Discrimination Claim**

As the parties agree, this employment discrimination case should be analyzed under the familiar <u>McDonnell Douglas</u>/<u>Burdine</u> three-prong burden-shifting framework.  Under that framework,

Mathirampuzha first must establish a prima facie case of discrimination on account of national origin.  See Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000).  To do so, Mathirampuzha must prove: (1) membership in a protected class; (2) qualification for his position; (3) an adverse employment action; and (4) circumstances giving rise to an inference of discrimination on the basis of membership in the protected class. See, e.g., McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000). "A plaintiff's burden of establishing a prima facie case is de minimis."  Abdu-Brisson v. Delta Airlines, Inc., 239 F.3d 456, 467 (2d Cir. 2001).

Defendant does not dispute that Mathirampuzha can prove the first and second prongs: he is from India, and he was qualified for his job as a mail handler.  However, defendant argues that plaintiff did not suffer an adverse employment action, and that he has raised no inference of discrimination.

To satisfy the third prong of the prima facie test, plaintiff argues that his treatment by Sacco, and his superiors' dismissive response to it, as well as the denial of his transfer requests to Hartford, constitute adverse employment actions.  "A plaintiff sustains an adverse employment action if he or she endures a 'materially adverse change' in the terms and conditions of employment."  Galabya v. New York City Bd. of Educ., 202 F.3d

636, 640 (2d Cir. 2002). "To be materially adverse[,] a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities." Id. (internal quotation marks and citation omitted). The Second Circuit has held that "[a]dverse employment actions include discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand" as well as involuntary transfer to a less desirable location or assignment such as, in the case of a teacher, assignment of lunchroom duty, reduction of class preparation periods, and assignment to a classroom on the fifth floor which aggravated the plaintiff's physical disabilities. See Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1999); Bernheim v. Litt, 79 F.3d 318, 324-26 (2d Cir. 1996). Mathirampuzha correctly notes that the Supreme Court has mentioned "denial of transfer" as potentially an adverse employment action, Morgan, 536 U.S. at 114, but no court has held that such denial, without any accompanying material change in working conditions, is an adverse employment action.

In Galabya, 202 F.3d at 640-41, the Second Circuit held that a delay in a teacher's reassignment to another school, followed by a mis-assignment to a post that he was not trained to fill, was not an adverse employment action where it did not ultimately harm his career in any way. In Williams v. R.H. Donnelley, Corp., 368 F.3d 123, 128 (2d Cir. 2004), the Second Circuit held

16

that a denial of a transfer that actually would have resulted in decreased salary and title within the organization, but would have relocated the plaintiff from New York to Las Vegas, where she had a home, did not constitute an adverse employment action. The Second Circuit stated that "subjective, personal disappointments do not meet the objective indicia of an adverse employment action." Id.

Here, plaintiff seeks a lateral transfer, with no change in salary, benefits, or job responsibilities.[4] He has been frustrated at the denial of his repeated transfer requests and the stress that commuting places on his family life, but these frustrations are the type of "subjective, personal disappointments" that do not qualify as adverse employment actions as a matter of law, because continuation in his current position does not change plaintiff's terms or conditions of employment.

Additionally, plaintiff's asserted treatment at the hands of Ron Sacco on September 29 -- while unprofessional and boorish -- and the initially dismissive attitude of other supervisors when Sacco's behavior was brought to their attention, does not amount to an "adverse employment action" because it did not materially affect the terms and conditions of Mathirampuzha's employment.

---

[4]Plaintiff has not testified that he sought the transfer to get away from Sacco; he has consistently requested transfers in order to be closer to his home.

Plaintiff does not allege that his job assignments, schedule, salary, or benefits were altered, or that he received any form of discipline stemming from the confrontation with Sacco.[5]

Because plaintiff cannot show that he suffered any adverse employment action as a result of the events of September 29, 2003, he cannot make out a prima facie case of national origin discrimination in violation of Title VII.  Defendant's motion for summary judgment on this claim therefore must be granted.

### C.   Federal Tort Claims Act

In his second complaint, Mathirampuzha alleges negligent supervision and claims damages under the FTCA.  Defendant moves to dismiss this complaint for lack of subject matter jurisdiction on the grounds that plaintiff's exclusive damages remedy for injuries sustained in the course of his employment is the Federal Employees' Compensation Act, ("FECA"), 5 U.S.C. § 8101 et seq.,[6]

---

[5]Rather, it was Sacco who was disciplined through a "letter of warning" for committing "conduct unbecoming a postal supervisor," Pl. Ex. R, and by temporary transfer out of the Wallingford plant for a year and assignment to attend management and "conflict resolution training" classes.  Pl. Ex. Q.

[6]Defendants also argue that the only appropriate respondent in an FTCA action is the United States and the FTCA claims in the second complaint against Postmaster John Potter and Ron Sacco must be dismissed.  Plaintiff has agreed to withdraw the claims against those defendants.  See Pl. Mot. in Opp. to Def. Mot. to Dismiss [Doc. # 82] at 1.
Additionally, defendants argue that even if the FTCA were available, it contains an exception for intentional assault and battery, and therefore the alleged assault by Ron Sacco is not remediable under FTCA.  The Court does not need to reach this argument, as it holds that plaintiff cannot bring an FTCA claim

The FECA provides for compensation to federal employees injured or killed in the line of duty. See 5 U.S.C. § 8102(a). The statutory exclusivity provision states:

> The liability of the United States or an instrumentality thereof ... with respect to the injury or death of an employee <u>is exclusive and instead of all other liability</u> of the United States or the instrumentality to the employee, his legal representative, spouse, dependents, next of kin, and any other person otherwise entitled to recover damages from the United States or the instrumentality because of the injury or death in a direct judicial proceeding, in a civil action, or in admiralty, or by an administrative or judicial proceeding under a workmen's compensation statute or under a Federal tort liability statute. ...

5 U.S.C. § 8116(c) (emphasis supplied). This section

> ... was designed to protect the Government from suits under statutes, such as the Federal Tort Claims Act, that had been enacted to waive the Government's sovereign immunity. In enacting this provision, Congress adopted the principal compromise – the 'quid pro quo' - commonly found in workers' compensation legislation: employees are guaranteed the right to receive immediate, fixed benefits, regardless of fault and without need for litigation, but in return they lose the right to sue the Government.

<u>Lockheed Aircraft Corp. v. United States</u>, 460 U.S. 190, 193-94 (1983).

Plaintiff argues that he has brought claims for damages for emotional distress as well as physical injury, and because the FECA does not compensate for emotional distress, his FTCA claim for such damages should be allowed to proceed. As indicated in

---

absent a determination from the Secretary of Labor that FECA does not apply.

the case plaintiff cites, there is a division of authority on this point: "some courts have held that emotional distress injuries are not covered by FECA, [while] other courts have declared that FECA encompasses emotional distress claims." O'Donnell v. United States, No. Civ. A. 04-00101, 2006 WL 166531, at *5-6 (E.D. Pa. Jan. 20, 2006) (collecting cases). "[W]hen there is a substantial question of FECA coverage, ... district courts will stay their proceedings pending a decision by the Secretary of Labor." Hightower v. United States, 205 F. Supp. 2d 146, 152 (S.D.N.Y. 2002).

Thus, plaintiff is restricted to bringing an FECA claim first before the Secretary of Labor. Given FECA's exclusivity provisions, this Court lacks jurisdiction to entertain plaintiff's FTCA claim absent a determination from the Secretary of Labor that FECA does not apply to his emotional distress claims.

**IV. Conclusion**

Accordingly, defendants' motions for dismissal and summary judgment [Docs. ## 58, 80] are GRANTED, both complaints are dismissed, and this case will be closed.

IT IS SO ORDERED.

/s/_____
JANET BOND ARTERTON
United States District Judge

**Dated at New Haven, Connecticut, this 21st day of August, 2006.**